UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

DEMARCUS QUINN #393561,

          Plaintiff,          Case No. 11-cv-13854
                                                  Honorable Victoria A. Roberts
      v.                               Magistrate Judge David R. Grand

JASON HUSS,

          Defendant.
_____/

**REPORT AND RECOMMENDATION TO DENY DEFENDANT
HUSS'S MOTION FOR SUMMARY JUDGMENT [10]**

**I.    RECOMMENDATION**

The instant motion was referred to this court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the court RECOMMENDS that defendant Jason Huss's Motion for Summary Judgment [10] be DENIED.

**II.   REPORT**

    **A.    Background**

        *1.    Procedural Background*

Plaintiff Demarcus Quinn filed a verified complaint in this court alleging a deprivation of his Eighth Amendment right to be free from cruel and unusual punishment [1].[1] Quinn alleges that as he was dispersing from the area where a fight had broken out between two other inmates, defendant Jason Huss, a prison officer, used excessive and unnecessary force upon him by slamming him to the ground and cuffing him. Quinn also alleges that Huss continued to use excessive force as he and another prison officer moved Quinn to segregation. Quinn seeks a

---

[1] Quinn signed his complaint with a declaration as to its truth, subject to penalty of perjury. (Cplt. at 4). *See Peterson v. Johnson*, No. 09-225, 2011 U.S. Dist. LEXIS 45772, *5-6 n.3 (W.D. Mich. March. 28, 2011).

transfer to a different facility, suspension of Huss, and $1,500 in compensatory damages.[2]

Huss filed a motion for summary judgment, arguing that his use of force was reasonable under the circumstances and was no more than necessary to subdue and maintain control over Quinn, whom he claims appeared a danger to him [10]. He also argues that he is entitled to qualified immunity and thus summary judgment should be granted in his favor. Quinn did not file a responsive brief to the summary judgment motion, though he did file an affidavit [15], which this court takes to be his response to the motion, in addition to the facts stated in his verified complaint. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (verified complaint carries the same weight as an affidavit for purposes of summary judgment).

### 2. Factual Background

On June 3, 2011, a prison fight broke out near the basketball court at the prison where Quinn was housed. (Plf. Cplt. at 2; Huss affd. ¶ 5). Huss and other officers, including Officer Tullar, were on the scene to break up the fight. (Plf. Cplt. at 2; Huss affd. ¶ 4). The officers told Quinn and other prisoners to leave the area of the fight. (Quinn affd. ¶ 4; Huss affd. ¶ 5). Quinn, who was seated at the time, claims that he moved away from the area of the fight as quickly as he could when ordered to do so, and that he said something to that effect to Huss as he was moving. (Quinn affd. ¶¶ 3-5). Huss, on the other hand, avers that Quinn did not move promptly despite repeated orders to disperse, and that when he got up from the table he "walked toward [Huss] and the disturbance doing the opposite of what he was ordered…" (Huss affd. ¶¶5-8); Summ. J. Mot. Exh. F at 7, Misconduct Report. Huss also contends that Quinn made threatening statements and locked out his arm, leading Huss to believe Quinn was going to use deadly force

---

[2] A recent notice filed by Quinn indicates that he has been transferred to another facility [16], and, even if Huss is ultimately found liable in this action, any internal discipline against him would generally rest with his employer. Thus, it appears that all that is left of Quinn's action is a claim for a fairly limited amount of monetary damages.

against him. (*Id.*).³ Huss proceeded to restrain Quinn by taking him to the ground by his left arm and then moving him to segregation while maintaining a hold on his wrists. (Quinn affd. ¶ 5, Plf. Cplt. at 2; Huss affd. ¶¶ 6, 8). Huss claims that Quinn struggled while being moved to segregation. (Huss affd. ¶ 8).

Once Quinn was in segregation, he was seen by medical personnel who assessed his left wrist, found there to be some swelling, and issued him an ace bandage, pain medication and an ice pack.⁴ (Summ. J. Mot. Exh. F at 14-15; Cplt. at 2). Later x-rays revealed that there were no fractures to Quinn's left hand. (Summ. J. Mot. Exh. F at 16; Quinn affd ¶ 11).

Quinn was issued a major misconduct ticket for failure to disperse and assault and battery on staff. (Summ. J. Mot. Exh. C at 7; Cplt. at 2). A hearing was held on June 14, 2011. (Summ. J. Mot. Exh. B at 2; Cplt. at 1). At the hearing, a video of the incident was played for the hearing officer, who wrote the following about it: "[the video] shows prisoner getting up from his seat at the table and walking away. His movement is slow but steady. He is seen turning and saying something to the officer as he walks away. When he gets out of camera range he is taken to the ground by staff." (Summ. J. Mot. Exh. B at 1). The hearing officer then found that:

> Officer Huss writes that Quinn was told to disperse by Officer Tullar but remained seated at the table. [Quinn] pleads not guilty based on his assertion that he got up from the table and walked away when ordered to do so. The video footage supports [Quinn's] assertions. He is seen getting up

---

³ Quinn alleges that Huss threatened to break his wrist, and later ordered Quinn to cry to show he would cease struggling, statements Huss denies making. (Huss affd. ¶ 12; Quinn affd. ¶¶ 6, 11).

⁴ The parties dispute the extent of Quinn's injury. Huss points to the x-rays and medical records from soon after the incident showing no fracture and that Quinn refused to engage the doctor in determining the exact extent of his injury. (Summ J. Mot. Exh. F at 7, 16). Quinn avers that his wrist was very swollen right after the incident, and that he has ongoing nerve problems in his left hand as a result. (Quinn affd. ¶ 11). The medical records themselves are somewhat inconsistent, as will be discussed more below. (*See generally* Summ J. Mot. Exh. F).

and walking away from the scene of the fight.[5]

(*Id.*).

The hearing officer also discussed the charge related to Quinn's alleged physical struggle with Officer Huss and his colleague, Officer Tullar, when the two were attempting to take him to segregation. (*Id.*). That incident was not captured on the video, and because Officer Tullar did not appear at the hearing and no statement was provided for him[6], the hearing officer dismissed that charge as well. (*Id.*).

On June 6, 2011, Quinn filed a grievance against Huss related to this incident, in which he alleged that Huss had broken his wrist. (Summ. J. Mot. Exh. C at 5; Cplt. at 2). His grievance was denied at Step I because he made "provability [sic] false statements on staff," as investigation revealed his wrist was not actually broken. (Summ. J. Mot. Exh. C at 6). In his Step II appeal, Quinn acknowledged that he had been wrong about his wrist being broken, but claimed that at the time (*i.e.*, three days after the incident) he believed it was broken based on the swelling. (*Id.* at 3). His appeal was denied at Step II and it was determined that Huss did not use excessive force against him. (*Id.* at 4). His Step III appeal was also denied. (*Id.* at 2). Based on his "false" allegations in his Step I grievance form, Quinn was issued a misconduct ticket for "Interference with the Administration of Rules," which was sustained in a hearing on July 21, 2011. (Summ. J. Mot. Exh. D; Cplt. at 2).

Huss now moves for summary judgment, arguing that the amount of force used was no

---

[5] This finding is in stark contrast to Huss's assertion, noted above, that Quinn "***walked toward*** myself [i.e., Huss] ***and the disturbance*** doing the opposite of what he was ordered…" (Huss affd. ¶ 6; Summ. J. Mot. Exh. F at 7, Misconduct Report) (emphasis added).

[6] Although it was apparently not provided for use at the hearing, Huss's motion is supported by Tullar's "Critical Incident Report" that is dated the same day as the incident. (Summ. J. Mot. Exh. E). Like Huss, Tullar stated that Quinn "started to move towards staff who were on the ground dealing with other prisoners" – presumably the ones who were fighting. *Id.*

4

more than necessary to subdue and control Quinn both initially and during the trip to segregation. (*Id.* ¶ 11). Quinn avers that he never resisted and followed all of Huss's instructions and avers that the force used was malicious and sadistic as there was no cause for it in the first place. (Quinn affd. ¶ 8).

### B. Analysis

#### 1. *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

In response to a summary judgment motion, the opposing party may not rest on its pleadings nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id*. (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id*. at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

    2.    *Excessive Force Standard*

To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove that "(1) a person, (2) acting under the color of state law, (3) deprived [him] of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001). Prisoners have the right to be free of cruel and unusual punishment at the hands of prison officials under the Eighth Amendment. The "core judicial inquiry" when a prison official is accused of using excessive force against a prisoner is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010); *see also Whitley v. Albers*, 475 U.S. 312, 319–321 (1986). In making this inquiry, the court must consider "the need for the use of force; the relationship between the need and the type and amount of force used; the threat perceived by the official; and the extent of the injury inflicted." *Holder v. Powell*, No. 09-625, 2011 U.S. Dist. LEXIS 90026, *18 (S.D. Ohio July 1, 2011) *citing Hudson v. McMillan*, 503 U.S. 1, 7 (1992).

Thus, there is both an objective and a subjective component to the inquiry. *See Padgett v. Caruso*, No. 10-950, 2011 U.S. Dist. LEXIS 116810, *15 (W.D. Mich. Aug. 17, 2011) *citing Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Furthermore, the injury suffered by the prisoner need not be serious to satisfy the standard, but the seriousness of the injury may be considered in determining whether the force used was wanton and unnecessary. *Id.* Not every push or shove will offend constitutional standards. *Wilkins*, 130 S. Ct. at 1178. This is because physical contact is often necessary for purposes of prison security and order. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986).

### 3. *Application of the Standards*

Here, there is a triable issue of fact as to whether Huss's actions were a good-faith effort to maintain prison discipline or were undertaken maliciously and sadistically. The parties dispute the underlying cause of the encounter between them. Quinn avers that when he became aware of the fight near him, he moved away from it as quickly as he could. (Quinn affd. ¶¶ 4, 5). Huss maintains that Quinn "walked toward myself ***and the disturbance*** doing the opposite of what he was ordered…" (Huss affd. ¶ 6) (emphasis added). Huss's "perception was that after locking out his arm and turning towards me, prisoner Quinn would then use deadly force against me." (*Id.*). However, as noted above, the hearing officer who viewed the video ruled in Quinn's favor as to the initial confrontation, finding that the video "supports [Quinn's] assertions. He is seen getting up and ***walking away from the scene of the fight***," albeit in a manner that was "slow but steady."[7] (Summ. J. Mot. Exh. B at 2) (emphasis added). While the court was not provided with a copy of the video, and makes no factual determination about its contents, the

---

[7] Thus, at least as to the "failure to disperse" charge, the court rejects Huss's argument that it was dismissed "not because the hearing officer determined that [Quinn] was innocent of the conduct," but because Officer Tullar "was not present to testify." (Summ. J. Mot. at 5).

7

hearing officer's written findings, coupled with Quinn's verified complaint and affidavit, raise at least a material question of fact about whether there was a need for Huss to physically confront Quinn in the first place.

Huss also argues that the circumstances of the situation did not allow Quinn to move away "slow but steady" or to "address[] Defendant Huss for any reason," noting that "his obligation was to leave the area" when he "is physically able to leave" or "immediately." (Summ. J. Mot. at 7; Huss affd. ¶ 3, 5). Again, however, the court was not provided a copy of the video, so presently the best evidence of whether Quinn appropriately left the scene of the fight is the hearing officer's conclusion that he was not guilty of "failure to disperse." Certainly, if the video or testimonial evidence establishes that Quinn ignored officers' instructions, or moved in the manner as alleged by Huss, that evidence could support judgment in Huss's favor, notwithstanding the hearing officer's conclusions. However, without the benefit of the video, and construing the present facts in the light most favorable to Quinn, a reasonable juror could conclude that Quinn complied with orders to leave the scene such that there would have been no reasonable basis for Huss to believe that Quinn presented any danger to his safety or the safety of others.[8] Thus, a jury could conclude that Huss's subjective belief[9] of the need for force against

---

[8] In making this ruling at this stage, the court is cognizant of the exigent circumstances faced by Officer Huss at the time of the incident. Supreme Court precedent cautions against second-guessing corrections officials who must make split-second decisions in a fast-paced and pressure-filled environment. *See Hudson*, 503 U.S. at 6. As noted, if Quinn ignored orders to leave the scene or made threatening statements or movements, those facts could support the use of force in this case. However, given the existence of video evidence which, at least according to the hearing officer, showed Quinn did not violate the prison's "failure to disperse" standards, a question of fact exists about whether the use of force was necessary and proper.

[9] The court takes Huss's point that it would not make sense for him to "ambush" a prisoner who was properly leaving the scene. (Summ. J. Mot. at 8). Still, however, that argument is predicated on Huss's contention that Quinn "created his own problem by failing to disperse," (*id.*), which contention was found to be lacking in merit by the hearing officer based on a review of the video evidence that is not before the court.

Quinn at that time was unreasonable under the circumstances.

The jury's resolution on the question of whether Quinn properly left the scene could also bear on its findings regarding the alleged physical altercation that occurred when Officers Huss and Tullar were moving him to segregation; Quinn says he "followed all orders [] and did not resist," while Huss claims that "Quinn pulled down and away from me and RUO Tullar." (Quinn affd. ¶ 3; Huss affd. ¶ 8).

Finally, the extent of Quinn's injury, while also in dispute, is secondary to the need for force in this case where there is a genuine dispute whether there was a need for any force to be applied in the first place. *See Wilkins*, 130 S. Ct. at 1178 ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts"). The Supreme Court has said that "when prison officials maliciously and sadistically use force to cause harm . . . contemporary standards of decency always are violated . . . whether or not significant injury is present." *Id.*, *quoting Hudson*, 503 U.S. at 9. However, there is also a material dispute as to the extent of Quinn's injuries, though they do not appear nearly as severe as Quinn first claimed (i.e., "broken"), or even as he claims now ("lifelong damage"). (Quinn affd. ¶ 9).

Yet, Huss's argument that there is no medical evidence supporting any injury to Quinn, (Mot. Summ. J. at 11) is not entirely accurate, either. Upon initial treatment through the segregation window, Quinn was noted to have had slight swelling and little movement in his left wrist. (Summ J. Mot. Exh. F at 14). He was given ice, Motrin and an ace bandage. (*Id.*). The same doctor saw Quinn the following day and again noted "minimal swelling" and "limited ROM" (range of motion) in the wrist, and progress notes also documented point tenderness in his left hand. (*Id.* at 11, 13). X-rays taken on June 10, 2011, showed no fracture in Quinn's left hand. (*Id.* at 16). On June 15, 2011, after Quinn was out of segregation, the attending doctor

9

noted scabbed over abrasions on both wrists, consistent with friction rubs, that were at least one week old, but no older than three weeks. (*Id.* at 7-8). The doctor stated that he had not seen such marks when he observed Quinn through the segregation window on June 7, but that "vision is limited through seg. cells glass." (*Id.* at 7). This also bears on the weight of the doctor's initial description of Quinn's swelling as only "slight." At the same time, according to the doctor, Quinn would not articulate the exact nature of his pain and would not engage in the ROM tests asked of him. (*Id.*). A follow-up on July 1, 2011, showed slight swelling and bruising on Quinn's left inner wrist. (*Id.* at 4).

As the Supreme Court in *Wilkins* held, the law in excessive force cases like this one has "shift[ed] the 'core judicial inquiry' from the extent of the injury to the nature of the force—specifically, whether it was nontrivial and 'was applied ... maliciously and sadistically to cause harm.'" *Wilkins*, 130 S.Ct. at 1179 (quoting *Hudson*, 503 U.S. at 7). Thus, as in *Wilkins*, even if Quinn is able to prevail at trial on the issue of whether Huss's use of force was proper, "the relatively modest nature of [his] alleged injuries will no doubt limit the damages he may recover," but does not preclude his case from going forward.

        4.        Qualified Immunity

Huss argues that he is entitled to qualified immunity even if Quinn has stated a claim for excessive force because his actions were not objectively unreasonable in light of clearly established law. The doctrine of qualified immunity "shields 'government officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004), *quoting Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Courts generally apply a two-part inquiry to determine whether a

10

defendant is entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds*, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In the first prong, the court determines whether "the facts alleged show the officer's conduct violated a constitutional right". *Id.* at 201. Under the second prong, the court considers "whether the right was clearly established." *Id.* The court has discretion as to the order in which the two prongs are considered. *Pearson*, 555 U.S. at 236

In excessive force cases, however, "the question of whether the reasonable officer would have known his conduct violated clearly established constitutional rights can be answered by the initial inquiry of whether the officer's use of force was objectively reasonable," *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001), in other words, whether his conduct violated a constitutional right. This is because it is "clearly established that the unnecessary and wanton infliction of pain constitute[s] cruel and unusual punishment forbidden by the Eighth Amendment." *Haynes v. Marshall*, 887 F.2d 700, 703 (6th Cir. 1989). As set forth above, there is a genuine dispute of fact whether Huss's use of force was objectively reasonable under the circumstances. As a result, he is not entitled to qualified immunity as a matter of law.

    **C.**    **Conclusion**

For the foregoing reasons, the court **RECOMMENDS** that Huss's Motion for Summary Judgment [10] be **DENIED**.


Dated: May 17, 2012                                   s/David R. Grand
Ann Arbor, Michigan                                  DAVID R. GRAND
                                                     United States Magistrate Judge

11

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 17, 2012.

            s/Felicia M. Moses
            FELICIA M. MOSES
            Case Manager